IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2015 AUG 10  AM 11: 54

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY

MONTIQUE FREELAND,

                **Plaintiff,**

-vs-                                           **Case No.  A-14-CA-443-SS**

COORS OF AUSTIN, L.P., d/b/a Capitol Beverage
Company and COORS OF AUSTIN, G.P., L.L.C.,
                          **Defendants.**

---

## <u>O R D E R</u>

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and

specifically Defendants Coors of Austin, L.P. d/b/a Capitol Beverage Company, and Coors of

Austin, G.P., L.L.C.'s Motion for Summary Judgment [#19], Plaintiff Montique Freeland's Response

[#22], and Defendants' Reply [#24]. Having considered the documents, the file as a whole, and the

governing law, the Court enters the following opinion and orders GRANTING the motion.

### Background

This is a disability discrimination case filed by Plaintiff Montique Freeland against his former

employer, Coors of Austin, L.P., d/b/a Capitol Beverage Company (Capitol Beverage).[1]  Capitol

Beverage is a wholesale beer distributor and hired Freeland on April 9, 2010.  Freeland suffered an

---

[1] At all relevant times, Freeland was employed by Defendant Capitol Beverage. *See* Defs.' Mot. Summ. J. [#19-1] (Miller Aff.) at 4.  Defendant Coors of Austin, G.P., L.L.C. is the general partner of Coors of Austin, L.P., d/b/a Capitol Beverage. *Id.*  Coors of Austin, G.P., L.L.C. never employed Freeland, and it does not have any employees. *Id.*  As such, Defendants argue all claims should be dismissed against Coors of Austin, G.P., L.L.C. *See* Defs.' Mot. Summ. J. [#19] at 2.  In his response, Freeland does not address this argument, nor does he present any opposing evidence.  Therefore, the Court GRANTS Defendants' motion with respect to Defendant Coors of Austin, G.P., L.L.C. and DISMISSES the claims against that entity.  The Court focuses on the claims against Freeland's actual employer, Defendant Capitol Beverage.

on-the-job injury to his knee on March 28, 2012, and was unable to work.  After exhausting all of his annual vacation time, sick leave, and twelve weeks of leave under the Family Medical Leave Act (FMLA), Freeland was terminated on June 25, 2012.  *See* Defs.' Mot. Summ. J. [#19-1] (Miller Aff.), Ex. E (Termination Form).  In the termination letter dated June 26, 2012, David Miller, Freeland's supervisor and the Sales Manager at Capitol Beverage, encouraged Freeland to contact Capitol Beverage about employment at Capitol Beverage as soon as he was released by his physician to return to work.  *See id.*, Ex. F (Termination Letter).  While Freeland's physician released him to return to work without restrictions on September 6, 2012, Freeland never contacted Capitol Beverage regarding further employment after that date.  *See id.*, Ex. B (Worker's Compensation Work Status Report); Miller Aff. at 3, 4; *id.* [#19-2] (Freeland Dep.) at 94:9–98:23.

The next time Capitol Beverage did receive a communication regarding Freeland was early May 2013 in the form of a Notice of Charge of Discrimination, dated May 7, 2013, from the Equal Employment Opportunity Commission (EEOC), indicating Freeland had filed a Form 5 Charge of Discrimination against Capitol Beverage for race discrimination under Title VII and disability discrimination under the Americans with Disabilities Act (ADA).  *See* Miller Aff. at 4; *id.*, Ex. I (which includes both the Notice of Charge and Freeland's Form 5 Charge of Discrimination). Following an investigation in which it collected information from both Freeland and Capitol Beverage, the EEOC sent Freeland a Dismissal and Notice of Rights on February 11, 2014, (1) dismissing Freeland's Form 5 Charge, concluding the information provided did not establish either race or disability discrimination, and (2) informing Freeland he may file a lawsuit against Capitol Beverage under federal law in federal or state court within ninety days of receipt of the Dismissal and Notice of Rights.  *See id.* [#19-2] (Eudy Aff.) at FREELAND 000001 (February 11,

2014 Dismissal and Notice of Rights); *see also id.* at FREELAND 000354 (January 31, 2014 Letter from EEOC, detailing the reasons for denial of Freeland's Form 5 Charge).

On May 9, 2014, Freeland sued Capitol Beverage, asserting violations of the ADA and the Texas Commission on Human Rights Act for: (1) refusal to accommodate his disability, (2) failure to engage in the interactive process, (3) discharging him, and (4) refusal to rehire him. *See* Compl. [#1] ¶ 14. Freeland also asserted a retaliation claim under the Texas Workers' Compensation Act, alleging Capitol Beverage terminated him because he filed a worker's compensation claim. *Id.* ¶ 21. After completion of discovery, Defendants filed a motion for summary judgment, arguing first that Freeland's claims are barred because he failed to file a timely charge with the EEOC and second that Freeland has failed to establish genuine issues of material fact on the elements of his claims. *See* Mot. Summ. J. [#19] ¶ 3. The parties have fully briefed the motion, making it ripe for the Court's determination.

## Analysis

### I.      Legal Standard—Summary Judgment

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec.*

*Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508.  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue.  *Matsushita*, 475 U.S. at 586.  Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment.  *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).  Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.  *Id.*  The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim.  *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.  *Id.*  "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248.  Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion.  *Id.*  If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted.  *Celotex*, 477 U.S. at 322–23.

## II.    Exhaustion of Administrative Remedies

An employee asserting claims under the ADA must exhaust administrative remedies before commencing an action in federal court against his employer. *See Dao v. Auchan Hypermarket*, 96 F.3d 787, 788–89 (5th Cir. 1996). Failure to exhaust remedies results in dismissal of claims on the merits. *Id.* The ADA incorporates by reference the procedures for exhaustion applicable to claims under Title VII. *See* 42 U.S.C. § 12117(a) (providing that the procedures set forth in 42 U.S.C. § 2000e *et seq.* apply to claims arising under the ADA). Specifically, a plaintiff must file a "charge of discrimination" with the EEOC within 180 days of the unlawful act or, if he has filed a complaint with a state or local agency, within 300 days. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–11 (2002); *Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 549 (5th Cir. 2009) (citing 42 U.S.C. § 2000e-5(e)(1)). The time period for filing a charge is subject to equitable doctrines such as tolling or estoppel. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 113 (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.")).

Here, the parties agree the triggering "unlawful act" was Freeland's termination, which occurred June 25, 2012. The parties also agree Freeland had 300 days from June 25, 2012, to file a claim with the EEOC, placing his deadline to file on April 21, 2013. The basis for Defendants' argument is simple: because Freeland did not submit his Form 5 Charge of Discrimination until after April 21, 2013, his claims are barred. Freeland does not dispute he filed his Form 5 Charge of Discrimination after April 21, 2013, and he does not argue any equitable doctrine like tolling or

estoppel applies. Instead, he argues he submitted an Intake Questionnaire on December 19, 2012, which satisfies the ADA's exhaustion requirement. As such, the disagreement between the parties boils down to whether the Intake Questionnaire qualifies as a "charge of discrimination" for purposes of the ADA.

**A.      *Federal Express Corp. v. Holowecki***

In *Federal Express Corp. v. Holowecki*, the Supreme Court considered the meaning of a "charge" filed with the EEOC for the purposes of a claim under the Age Discrimination in Employment Act (ADEA). 552 U.S. 389, 394 (2011). One of the plaintiffs had submitted an intake questionnaire and attached a signed six-page affidavit describing the alleged discriminatory employment practices in greater detail. *Id.* The two questions for the Court were: (1) what is a "charge" under the ADEA?; and (2) were the documents submitted—the intake questionnaire and accompanying affidavit—a "charge"? *Id.* at 395. After analyzing the regulations, the Court answered the first question as follows:

> In addition to the information required by the regulations, *i.e.*, an allegation and the name of the charged party, if a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee.

*Id.* at 402. The Supreme Court described the test as a "permissive standard" that would allow a "wide range of documents" to be classified as charges, including "a form, easy to complete, or an informal document, easy to draft." *Id.*

Applying its announced standard to the documents at issue in the case, the Supreme Court concluded the intake questionnaire included all of the information required by the regulations, "including: the employee's name, address, and telephone number, as well those of her employer; an

allegation that she and other employees had been the victims of 'age discrimination'; the number of employees who worked at the [facility] where she was stationed; and a statement indicating she had not sought the assistance of any government agency regarding this matter." *Id.* at 404. The defendant contended the intake questionnaire was deficient because it contained no request for the agency to act. *Id.* at 405. The Supreme Court responded to this argument as follows:

> Were the Intake Questionnaire the only document before us we might agree its handwritten statements do not request action. The design of the form in use in 2001, moreover, does not give rise to the inference that the employee requests action against the employer. Unlike EEOC Form 5, the Intake Questionnaire is not labeled a "Charge of Discrimination[.]" In fact the wording of the questionnaire suggests the opposite: that the form's purpose is to facilitate the 'pre-charge filing counseling' and to enable the agency to determine whether it has jurisdiction over 'potential charges.' There might be instances where the indicated discrimination is so clear or pervasive that the agency could infer from the allegations themselves that action is requested and required, but the agency is not required to treat every completed Intake Questionnaire as a charge.

*Id.* at 405 (internal citations to the appendix omitted).

The plaintiff in the case, however, had submitted the "detailed six-page affidavit" in addition to the intake questionnaire, and "[a]t the end of the last page, [the plaintiff] asked the agency to '[p]lease force Federal Express to end their age discrimination plan so we can finish out our careers absent the unfairness and hostile work environment created within their application of [that plan].'" *Id.* (internal citations to the appendix omitted). The Supreme Court found that statement "is properly construed as a request for the agency to act," and therefore concluded the documents submitted by plaintiff, taken together, satisfied the "charge" requirement under the ADEA. *Id.*

The Court notes *Holowecki* addressed the meaning of "charge" under the ADEA, and the Supreme Court has not spoken on whether this same test extends to non-ADEA contexts. In fact, the Supreme Court, "[a]s a cautionary preface," pointed out that "the EEOC enforcement

mechanisms and statutory waiting periods for ADEA claims differ in some respects from those pertaining to other statutes the EEOC enforces, such as Title VII . . . and the [ADA]." *Holowecki*, 552 U.S. at 393. The Supreme Court further warned that whether the rule under the ADEA can be applied to Title VII or the ADA requires "careful and critical examination." *Id.* (citations omitted). Courts encountering this issue have applied *Holowecki* to ADA claims while accounting for differences between the statutes. *See, e.g., Stewart v. SEIU United Healthcare Workers–W.*, No. C 11-04438 JSW, 2012 WL 1357633, at *2 (N.D. Cal. Apr. 17, 2012); *Price v. City of New York*, 797 F. Supp. 2d 219, 225 (E.D.N.Y. 2011); *Steiner v. Prof'l Servs. Indus., Inc.*, No. 08-723, 2009 WL 2950755, at *2 (W.D. Pa. Sept. 9, 2009). In *Price*, the court "carefully and critically examined 29 C.F.R. § 1601, the regulations that apply to both the ADA and Title VII" and concluded "this set of regulations bears substantial similarity to the ADEA regulations at issue in *Holowecki. See* 29 C.F.R. § 1626." *Id.* The *Price* court, however, did observe one key difference. The ADEA regulations state: "A charge shall be in writing and shall name the prospective respondent and shall generally allege the discriminatory act(s). Charges received in person or by telephone shall be reduced to writing." *Id.* (citing 29 C.F.R. § 1626.6). In contrast, the ADA and Title VII regulations require that "[a] charge shall be in writing and signed and shall be verified." *Id.* (citing 29 C.F.R. § 1601.9).

The Court is aware of no decision within this Circuit that has explicitly considered whether the *Holowecki* standard extends to the ADA, but courts in this Circuit have applied *Holowecki* in assessing the timeliness of charges in employment discrimination cases generally. *See, e.g., Henderson v. Bank of Am., N.A.*, No. 2:14-CV-895, 2015 WL 2374519, at *2 (E.D. Tex. May 15, 2015) (ADEA and ADA without discussion); *Angelina v. Univ. of Miss. Med. Ctr.*, No. 3:14CV789-

-8-

DPJ-FKB, 2015 WL 417846, at *2–3 (S.D. Miss. Jan. 30, 2015) (Title VII); *Nadesan v. Tex. Oncology PA*, No. 2:10-CV-239-J, 2011 WL 147570, at *3–4 (N.D. Tex. Jan. 18, 2011) (Title VII); *Ojedis v. JetBlue Airways Corp.*, No. A-08-CA-127-LY, 2008 WL 961884, at *3–4 (W.D. Tex. Apr. 9, 2008) (Title VII).

**B.     Freeland's Intake Questionnaire and Form 5 Charge of Discrimination**

Freeland's communication with the EEOC regarding potential employment discrimination began when, represented by the Law Office of Richard Pena,[2] he filed his Intake Questionnaire with the Texas Workforce Commission Civil Rights Division (TWCCRD) on December 19, 2012. *See* Resp. [#22-3] Ex. 4 (Intake Questionnaire). On the form, Freeland checked the box for disability discrimination and submitted the name, address, and contact information for himself, his lawyer, and Capitol Beverage. *Id.* He further checked boxes indicating he was discharged, and there was no reasonable accommodation of his disability. *Id.* In describing the "Date of First Harm," Freeland handwrote the following:

> On 3-28-2012 I was a Driver Helper, I was at work and it was raining lightly. I was using a step ladder to get some beer down and when I stepped back, I slipped landing on my feet injuring my left knee. MRI revealed left medial meniscus tear, sprain of unspecified site of knee and leg. Sprain of medial collateral ligament of knee, Internal Derangement of knee.

*Id.* at 2.

In explaining the "Reason Employer gave you for their actions," Freeland wrote: "I was told that they did not have light duty for me so they put me on FMLA." *Id.* The form instructed Freeland to "Provide the full names of other employees treated MORE FAIRLY than you," and Freeland

---

[2] Freeland was represented by the Law Office of Richard Pena throughout the EEOC filing process, and he is currently represented by different counsel in this lawsuit.

wrote the names of two coworkers. *Id.* Finally, Freeland signed the Intake Questionnaire underneath the following:

> I am aware that this charge will also be filed with both the EEOC and the State of local Agency. I will accept my responsibility to advice the agency if I change my address, phone number, or employment status, and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

*Id.*

The above description reflects all the content contained in Freeland's Intake Questionnaire. Two days later, on December 21, 2012, the TWCCRD responded to Freeland in a letter addressed to both him and his attorney, informing him that it had "reviewed your recent inquiry concerning possible employment discrimination by your employer" and that it was "unable to draft a charge on your behalf because" his complaint had been transferred to the Austin Equal Employment/Fair Housing Office. *See* Resp. [#22-2] Ex. 2.

On April 9, 2013, Freeland's attorney received a letter from the Austin Equal Employment/Fair Housing Office stating:

> Our office is in receipt of the above Intake Questionnaire as I informed you on December 31, 2012. During our conversation on this date, you were going to get additional information for me; however, to date I have not heard from you. From the questionnaire, I have prepared a charge of discrimination for your client, Mr. Freeland. Please review and if it is satisfactory, please have Mr. Freeland sign at the bottom (make sure right side is notarized) and return to me immediately for further processing.

Eudy Aff. at FREELAND 000180.

On April 25, 2013, Freeland's attorney's legal assistant, Raquel Salazar, responded to the Austin Equal Employment/Fair Housing Office by sending it a letter providing that "[e]nclosed are the signed Charge of Discrimination and Intake Questionnaire." *Id.* at FREELAND 000381.

-10-

Capitol Beverage first became aware of Freeland's claim when it received the Notice of Charge of Discrimination shortly after it was completed and signed by the EEOC May 7, 2013. *See* Miller Aff. at 4. Accompanying the Notice of Charge was the Form 5 Charge of Discrimination itself, which is labeled at the top: "Charge of Discrimination." *See id.*, Ex. I. The Charge appears to have been prepared by the Austin Equal Employment/Fair Housing Office as indicated in the letter of April 9, 2013. *Id.* The Charge contains the address and contact information for both Freeland and Capitol Beverage and also a description of the alleged discrimination, which mirrors the description in Freeland's Intake Questionnaire. *Id.* At the bottom of the form, Freeland signed and dated the form April 24, 2014, underneath essentially the same statement contained in the Intake Questionnaire. *Id.* But the Form 5 Charge of Discrimination adds the following sentence that is absent from the Intake Questionnaire: "I declare under penalty of perjury that the above is true and correct." *Id.* Finally, the Form 5 Charge of Discrimination is notarized by Salazar, and signed again by Freeman, indicating he "swear[s] or affirm[s] that I have read the above charge and that it is true to the best of my knowledge, information and belief." *Id.*

## C.    Application

Assessing the Intake Questionnaire, the Court concludes it does not amount to a "charge of discrimination" for purposes of the ADA for a variety of reasons. As an initial matter, while Freeland's Intake Questionnaire clearly contains the name of the charged party and an allegation of discrimination, which are the basic requirements of the ADEA's regulations as described in *Holowecki*, it does not include the additional requirement—contained in the ADA's regulations—that a "charge shall be in writing and signed and verified." Freeland's Intake Questionnaire is written and signed, but it is not verified. In contrast, his Form 5 Charge of

-11-

Discrimination is verified.  While "[a] charge may be amended to cure technical defects or omissions, including failure to verify the charge" and "such amendments . . . will relate back to the date the charge was first received," *see* 29 C.F.R. § 1601.12(b), Freeland makes no argument that the verification in his Form 5 Charge of Discrimination should relate back to his Intake Questionnaire.  Moreover, the Form 5 Charge of Discrimination was not an amendment to the Intake Questionnaire; it was a separate form document.

Regardless of the lack of verification, the Intake Questionnaire still is not a charge because it lacks the request to act demanded by *Holowecki*.  Nowhere does the form contain any statement that, "from the standpoint of an objective observer," would indicate Freeland "requests the agency to activate its machinery and remedial processes." *Holowecki*, 552 U.S. at 402.  Freeland simply completed the Intake Questionnaire and no more.  Unlike the plaintiff in *Holowecki* who included a detailed six-page affidavit that included an explicit demand for the EEOC to "force" the defendant to cease its discrimination policy, Freeland and his attorney did not include any supporting documents to the Intake Questionnaire.

While the signature block on the bottom of the second page does use the word "charge" in small print to refer to the form being signed, the form is also titled at the top of the first page "Intake Questionnaire."  Moreover, the use of the word "charge" in the signature block does not in itself satisfy *Holowecki*'s request-to-act requirement. *See id.* ("[I]f a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee.").  If simply completing the Intake Questionnaire amounted to a charge, then every properly completed intake questionnaire would be a charge, a conclusion not supported by the statute, its regulations, or

-12-

*Holowecki*, which held "the agency is not required to treat every completed Intake Questionnaire as a charge." *Id.* at 405; *see also Nadesan*, 2011 WL 147570, at \*4; *Evenson*, 2008 WL 4107524, at \*7. While the Supreme Court in *Holowecki* anticipated "scenarios in which the allegations of discrimination in an intake questionnaire are 'so clear or pervasive' that they should be treated as a call for EEOC action, despite the absence of an explicit statement to that effect," the Court in this case sees nothing in the four sentences of allegations set forth by Freeland in his Intake Questionnaire to warrant treating his form in such a fashion. *See id.* at 405.

A review of the case law in this circuit applying *Holowecki* demonstrates courts analyzing intake questionnaires and any accompanying documents consistently identify a specific statement indicating a request to act when they deem a particular filing a charge. A common fact pattern involves a certain EEOC intake questionnaire that asks the complainant to choose between two boxes, one which indicates the plaintiff "want[s] to file a charge of discrimination" and "authorize[s] the EEOC to look into the discrimination described above" while the other indicates the plaintiff "want[s] to talk to an EEOC employee before deciding whether to file a charge of discrimination." *See Crevier-Gerukos v. Eisai, Inc.*, No. H-11-0434, 2012 WL 681723, at \*8 (S.D. Tex. Feb. 29, 2012). If the plaintiff checks the former, courts find the request-to-act requirement satisfied. *See id.*[3] Here, Freeland's intake questionnaire, which appears to be produced by the TWCCRD, does not include those boxes. In cases where there is an absence of any statement indicating a request for

---

[3] *See also Henderson*, 2015 WL 2374519, at \*2; *Price v. Am. Eagle Airlines, Inc.*, No. 10-904, 2014 WL 7338882, at \*3 (W.D. La. Dec. 22, 2014); *Becerra v. Ms. Ellie's Kitchen*, No. 11-1833, 2012 WL 5363793, at \*4 (E.D. La. Oct. 31, 2012); *Sayre v. Pharmacy Corp. of Am.*, No. 3:10CV536TSL-FKB, 2010 WL 4638597, at \*2 (S.D. Miss. Nov. 8, 2012) (same and noting the plaintiff's cover letter stating she intended her intake questionnaire "to initiate a charge of discrimination" and asked the EEOC to "lodge this Charge as filed today in your records"); *Muthukumar v. Univ. of Tex. at Dall.*, No. 3:10-CV-0115-B, 2010 WL 5287530, at \*3 (N.D. Tex. Dec. 27, 2010).

remedial action, courts in this circuit have held the intake questionnaire is not a charge and dismissed the plaintiff's claims.[4]

Finally, the Court notes the correspondence between the TWCCRD and Freeland's attorney. The Court is aware of the Supreme Court's instruction in *Holowecki* to focus only on the Intake Questionnaire and any attached documents in considering whether they amount to a charge and not extrinsic indicators like, for example, whether the EEOC actually initiated a conciliation process based on those documents or whether the plaintiff filed a formal charge of discrimination subsequent to those documents. *See Holowecki*, 552 U.S. at 403–04, 406. The Court heeds that guidance and concludes the Intake Questionnaire is not a charge on its face for the reasons described above. The Court, however, notes the extrinsic evidence further supports that conclusion, and it demonstrates Freeland and his attorney had ample opportunity, time, and notice to file a charge of discrimination in a timely manner.

The relevant correspondence begins with the letter Freeland's lawyer received two days after filing the Intake Questionnaire from the TWCCRD, calling the Intake Questionnaire Freeland's "recent inquiry concerning possible employment discrimination" and informing Freeland's attorney

---

[4] *See Angelina*, 2015 WL 417846, at *3 (noting the absence of any request to act despite the plaintiff attaching a sixteen-page affidavit detailing the alleged unlawful employment practices); *Nadesan*, 2011 WL 147570, at *4–5 (noting the absence of any request to act despite the plaintiff attaching a detailed statement outlining the allegations to the intake questionnaire); *Evenson v. Sprint/United Mgmt. Co.*, No. 3:08-CV-0759-D, 2008 WL 4107524, at *7–8 (N.D. Tex. Aug. 21, 2008) (observing the absence of any request for agency action in the plaintiff's charge questionnaire, intake questionnaire, or layoff questionnaire); *Asongwe v. Wash. Mut. Card Servs. & Subsidiaries*, No. 3:09-CV-0688-G (BH) ECF, 2009 WL 2337558, at *3 (N.D. Tex. July 29, 2009) (observing the failure of the intake questionnaire to request remedial action by the EEOC); *but see DeBlanc v. St. Tammany Parish Sch. Bd.*, No. 13-6253, 2015 WL 1245781, at *8 (E.D. La. Mar. 18, 2015) (concluding a one-page intake questionnaire was a charge simply because it generated an EEOC investigation of the plaintiff's retaliation claim); *Taylor v. CPI Grp., Inc.*, No. 1:07CV255-P-D, 2009 WL 901774, at *1 n.1 (N.D. Miss. Mar. 30, 2009) (finding intake questionnaire qualified as a charge because "the EEOC itself treated the filing as a charge (as demonstrated by the initiation of conciliation proceedings)"). The Court finds these last two cases contravene *Holowecki*, which specifically rejected an approach based on whether the EEOC initiates a conciliation process in response to the claimed "charge" at issue. *See Holowecki*, 552 U.S. at 403–04.

it was unable "to draft a charge" on Freeland's behalf at that time.  Four months later on April 9, 2013, approximately two weeks before Freeland's 300-day deadline lapsed, Freeland's attorney received a letter from Irma Madrigal with the Austin Equal Employment/Fair Housing Office, which included the following information: (1) the Austin Equal Employment/Fair Housing Office was in receipt of the Intake Questionnaire; (2) Madrigal had a conversation with Freeland's attorney on December 31, 2012, and at that time Freeland's attorney indicated he was going to provide more information to Madrigal; (3) Freeland's attorney had not, as of April 9, 2013, provided that additional information; (4) Madrigal had "prepared a charge of discrimination for your client, Mr. Freeland"; and (5) Madrigal requested Freeland's attorney review the prepared charge and "please have Mr. Freeland sign at the bottom (make sure right side is notarized) and return to me immediately for further processing."  On April 25, 2013, after the deadline, Freeland's attorney sent a letter to Madrigal and stated "enclosed are the signed Charge of Discrimination and Intake Questionnaire."

The correspondence, taken together, indicates neither the TWCCRD, the Austin Equal Employment/Fair Housing Office, nor even Freeland's attorney understood the Intake Questionnaire to be a charge of discrimination; to the contrary, all parties understood the Intake Questionnaire and the Charge of Discrimination to be separate documents.  Additionally, the correspondence shows this case does not present a pro se layperson deserving of leeway in the matters of legal filings.  Freeland was represented by counsel throughout the entire process, and his counsel even received a warning two weeks prior to Freeland's deadline to make sure to submit the Charge of Discrimination. Nevertheless, Freeland's counsel, apparently lacking diligence, failed to submit the signed charge by the required date.

**D.      Equitable Tolling**

While Freeland does not request the Court apply equitable tolling to save his untimely claims, the Court observes tolling would not be appropriate under the circumstances of this case. "'In order for equitable tolling to apply, the applicant must diligently pursue . . . his relief . . . . As this court has noted, equity is not intended for those who sleep on their rights.'" *Joe v. City of Hous. Fire Dep't*, 211 F.3d 124, 2000 WL 309460, at *4 (5th Cir. 2000) (unpublished table decision) (quoting *Coleman v. Johnson*, 184 F.3d 398, 403 (5th Cir. 1999)). Equitable tolling does apply when the plaintiff is "prevented in some extraordinary way from asserting his rights." *Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir. 1996). For instance, equitable tolling may be appropriate if the plaintiff is actively misled by the defendant or the delay was caused by the EEOC's misleading the plaintiff about the nature of his rights. *See Ramirez v. City of San Antonio*, 312 F.3d 178, 183 (5th Cir. 2002). "The principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).

Here, Freeland was represented by counsel, and there is no indication in the record that anyone or anything prevented him from timely filing his charge of discrimination except Freeland himself or his attorney. The EEOC did not mishandle his claim and in fact gave counsel a warning two weeks before the filing deadline to make sure to submit a signed charge. Equitable tolling is not applicable.

## Conclusion

Because Freeland did not timely file a charge of discrimination with the EEOC, he failed to exhaust his administrative remedies, and Defendant Capitol Beverage is entitled to summary judgment on the claims against it for disability discrimination under the ADA and the Texas

Commission on Human Rights Act.  As such, the Court need not address the underlying merits of Freeland's discrimination claims.  The only remaining claim is Freeland's retaliation claim under the Texas Workers' Compensation Act, but lacking jurisdiction, the Court must dismiss that cause of action without prejudice.

Accordingly,

IT IS ORDERED that Defendants Coors of Austin, L.P. d/b/a Capitol Beverage Company, and Coors of Austin, G.P., L.L.C.'s Motion for Summary Judgment [#19] is GRANTED.

SIGNED this the _10th_ day of August 2015.


SAM SPARKS
UNITED STATES DISTRICT JUDGE